1
2
3
4
5
6
7                     IN THE UNITED STATES DISTRICT COURT

8                   FOR THE EASTERN DISTRICT OF CALIFORNIA

9  LELAND LAMONT PHILLIPS

10            Petitioner,                    No. 2:10-cv-1368 KJM JFM (HC)

11       vs.

12  JAMES YATES,

13            Respondent.            FINDINGS AND RECOMMENDATIONS

14  _____/

15            Petitioner, a state prisoner, proceeds pro se with a petition for writ of habeas

16  corpus filed pursuant to 28 U.S.C. § 2254.  Petitioner stands convicted of two counts of forcible

17  rape on a child and three counts of aggravated sexual assault on a child for which he is serving

18  an aggregate prison term of 25 years plus 250 years to life.

19                              BACKGROUND

20            The California Court of Appeal, Third District, summarized the basic facts

21  underlying petitioner's criminal convictions at issue in this case:

22            The events at issue in this case occurred between 1994 and 1996.
              During this time, when C.J. was 14 years old, she spent several
23            nights at the home of her aunt, Geraldine.  Defendant, who was
              living with Geraldine, woke C.J., took her to the garage, and raped
24            her.  He raped her a second time in the kitchen of the house.
              Defendant also sodomized Geraldine's developmentally disabled
25            young son, M.G., on several occasions.  Neither child reported
              defendant's actions at the time because they were afraid of him.
26

                                        1

1

> Defendant was charged with two counts of forcible rape committed
> on C.J. and three counts of aggravated sexual assault on M.G.

2

3    Lodged Document ("LD") 5 at 2.

4          A jury convicted petitioner on all counts, but the California Court of Appeal

5    reversed, finding that he had been denied his right to a public trial.  LD 1.  By the time of retrial,

6    C.J. was 25 years old, and M.B. was 20 years old, but functioned on the level of a third or fourth

7    grader.  LD 5 at 3.  The victims again described the acts committed by petitioner years earlier.

8    Pursuant to section 1108 of the California Code of Evidence, another witness testified that

9    petitioner had raped her when she was 15 years old.  LD 5 at 3.  Again, the jury convicted

10   petitioner on all counts.

11         The trial court found true that he had sustained a  prior rape conviction and

12   sentenced him to an aggregate term of 25 years plus 250 years to life.  LD 5 at 1.  Petitioner

13   appealed again, this time the state appellate court affirmed the judgment.  LD 2, 5.  The

14   California Supreme Court denied a petition for review.  LD 6, 7.

15                                    ANALYSIS

16   I.  Standards for a Writ of Habeas Corpus

17         Federal habeas corpus relief is not available for any claim decided on the merits

18   in state court proceedings unless the state court's adjudication of the claim:

19            (1) resulted in a decision that was contrary to, or involved an
                 unreasonable application of, clearly established Federal law, as
20               determined by the Supreme Court of the United States; or

21            (2) resulted in a decision that was based on an unreasonable
                 determination of the facts in light of the evidence presented in the
22               State court proceeding.

23   28 U.S.C. § 2254(d).

24         Under section 2254(d)(1), a state court decision is "contrary to" clearly

25   established United States Supreme Court precedents if it applies a rule that contradicts the

26   governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

                                         2

1    indistinguishable from a decision of the Supreme Court and nevertheless arrives at different

2    result. *Early v. Packer*, 537 U.S. 3, 7 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405-406

3    (2000)).

4              Under the "unreasonable application" clause of section 2254(d)(1), a federal

5    habeas court may grant the writ if the state court identifies the correct governing legal principle

6    from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

7    prisoner's case. *Williams*, 529 U.S. at 413.  A federal habeas court "may not issue the writ

8    simply because that court concludes in its independent judgment that the relevant state-court

9    decision applied clearly established federal law erroneously or incorrectly.  Rather, that

10   application must also be unreasonable." *Id*. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75

11   (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

12   question, is left with a 'firm conviction' that the state court was 'erroneous.'")

13             The court looks to the last reasoned state court decision as the basis for the state

14   court judgment. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002).  Under AEDPA, a state

15   court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption

16   by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Ybarra v. McDaniel*, 656 F.3d 984,

17   989 (9th Cir. 2011).  Where the state court reaches a decision on the merits but provides no

18   reasoning to support its conclusion, a federal habeas court independently reviews the record to

19   determine whether habeas corpus relief is available under section 2254(d).  *Delgado v. Lewis*,

20   223 F.3d 976, 982 (9th Cir. 2000).

21   II.  Petitioner's Claims

22             A.      Self-Representation

23             The right to counsel guaranteed by the Sixth Amendment "has been interpreted to

24   encompass 'an independent constitutional right' of the accused to represent himself at trial, and

25   thus waive the right to counsel." *Stenson v. Lambert*, 504 F.3d 873, 882 (9th Cir. 2007) (quoting

26   *Faretta v. California*, 422 U.S. 806 (1975).  Petitioner claims he was denied his constitutional

right to self-representation when the trial court failed to make adequate inquiry into his requests

to represent himself at trial and in denying his requests.

At a trial readiness conference on March 14, 2007, petitioner was represented by

Mr. Smith, his court appointed attorney.  Mr. Smith told the court that petitioner requested a two

week continuance of the trial date, as petitioner was attempting to retain private counsel.  LD 10

at 2.  The court denied the motion, indicating to petitioner if "you do retain counsel and they

wish to seek a good cause continuance of the trial date, the file will reflect that you informed the

Court of this effort today...."  LD 10 at 2.

Petitioner then moved to discharge Mr. Smith and for substitute counsel to be

appointed, pursuant to *People v. Marsden*, 2 Cal.3d 118 (1970).  Petitioner stated his belief that

counsel was unprepared for trial.  He complained that counsel's visits were short and few in

number, that counsel had not issued subpoenas petitioner thought should be issued, and that the

investigator had not been to see petitioner at all.  LD 12 at 5-7.  Mr. Smith responded by

outlining the steps he had taken to prepare for trial, which included reviewing the transcripts

from the first trial, talking to petitioner's prior attorney and prior defense investigator, and

issuing the subpoena petitioner had identified as necessary.  LD 12 at 7-9.  Counsel stated he was

ready to try the case.  LD 12 at 9.  Petitioner expressed his disagreement:

> He's not prepared. I don't want him representing me.  I will go pro
> per before he represents me.  He's not going to mess up my life
> again.  It's not going to happen.  So I'm asking you please give me
> another counsel or let me go pro per, because he's not prepared.

LD 12 at 10.  The trial court found that petitioner was "being adequately represented" and denied

the motion.  LD 12 at 12.

Hearings on in limine motions were held on March 26 and 27, 2007; petitioner

was present but did not raise any issue related to his representation.  LD 10 at 14-73.  On April 2,

2007, the morning of trial, he renewed his *Marsden* motion just before jury selection was set to

begin, reiterating his complaints about counsel's preparations.  LD 13 at 64, 67-70.  Mr. Smith

again explained what he had done to prepare for trial and the trial court again denied the motion.

LD 13 at 71.  Petitioner then stated, "Well, your Honor, I have no – nothing else I can do besides

file a Faretta Motion then."  LD 13 at 72.  The court responded:

> No. We're not going to do that, Mr. Phillips.  I'll tell you why.
> Because right now I'm going to find that given the Marsden
> Motions that you've made in the past, given how quickly they
> come one on top of another, given the response from your
> attorneys in these motions and given that the matters that you've
> raised are matters that – I'm not going to say that are frivolous but
> are matters that resolve and a resolution of those matters is within
> your knowledge.
>
> I'm going to find that you're – at least today's Marsden Motion
> and to the extent that you are making a Faretta Motion today are
> designed to derail this case and to attempt to delay this case. [¶]
> So I'm going to find that you are doing this out of frustration and
> out of a motive to derail this case rather than out of a legitimate
> desire to represent yourself.  I'm going to deny your motion.

LD 13 at 72.

Petitioner claimed on appeal, as he does here, that the trial court failed to conduct

the appropriate inquiry into his desire for self-representation and erred in denying his motion.

The California Court of Appeal, Third Appellate District, rejected the claim:

> Defendant's comments at the March 14 hearing cannot be
> construed as an unequivocal request for self-representation as
> required for a *Faretta* motion.  In the middle of his requests for a
> continuance to obtain private counsel and his *Marsden* motion to
> relieve appointed counsel, defendant stated that he did not want his
> attorney to represent him and commented "I will go pro per before
> he represents me."  Adding "I'm asking you please give me
> another counsel or let me go pro per, because he's not prepared,"
> defendant then continued his criticisms of his attorney; no further
> mention was made of any desire for self-representation.
>
> "The court faced with a motion for self-representation should
> evaluate not only whether the defendant has stated the motion
> clearly, but also the defendant's conduct and other words.  Because
> the court should draw every reasonable inference against waiver of
> the right to counsel, the defendant's conduct or words reflecting
> ambivalence about self-representation may support the court's
> decision to deny the defendant's motion.  A motion for self-
> representation made in passing anger or frustration, an ambivalent
> motion, or one made for the purpose of delay or to frustrate the
> orderly administration of justice may be denied." (*People v.*

5

*Marshall* (1997) 15 Cal.4th 1, 23; accord *People v. Valdez* (2004) 32 Cal.4th 73, 99.)

Defendant's fleeting reference to *Faretta* can best be viewed as an impulsive comment made in the course of a litany of complaints about his attorney.  (See *People v. Valdez, supra,* 32 Cal.4th at p. 99.)  Defendant's focus was his *Marsden* motio to replace his appointed counsel.  Because there was no unequivocal invocation of a right to self-representation, the trial court was not obligated to question defendant further on this matter.  (*Ibid.*)

Nor did the trial court err in denying the *Faretta* motion defendant made on April 2.  Court hearings had been held on March 26 and 27, 2007, but defendant raised no concerns about his representation on either occasion.  On April 2, as trial was about to begin, defendant renewed his *Marsden* motion, raising the same claims he had made earlier.  When the court denied the motion, defendant commented that the only thing left for him to do was file a *Faretta* motion.  As previously described, the court denied that motion, finding it was made out of a desire to "derail" the case rather than out of a legitimate desire for self-representation.  The court's ruling was proper.

Defendant made his motion just as jury selection was scheduled to begin.  *Faretta* motions made shortly before the start of trial are not timely.  (*People v. Scott* (2001) 91 Cal.App.4th 1197, 1205), and the trial court is vested with broad discretion in ruling on such requests.  (*People v. Valdez, supra,* 32 Cal.4th at p. 102.)  "In exercising this discretion, the trial court should consider factors such as "'the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion.'" (*People v. Jenkins* (2000) 22 Cal.4th 900, 959; accord *People v. Valdez, supra*, 32 Cal.4th at p. 103.)

Here, defendant offered no explanation for the delay in seeking representation.  The trial court noted that defendant had filed frequent and repetitive motions to relieve counsel and concluded that defendant's *Faretta* motion was made out of frustration, rather than any true desire for self-representation.  The record bears out that assessment.  There was no *Faretta* error.

LD 5 at 7-9.

In *Faretta*, the defendant made a clear and unequivocal request for self-representation weeks before trial.  *Faretta*, 422 U.S. at 835.  It appears that Faretta's "weeks before trial" standard is the only clearly established Supreme Court standard for the timeliness of

6

1    a request for self-representation.  *See Faretta*, 422 U.S. 835; *see also Marshall v. Taylor*, 395

2    F.3d 1058, 1061 (9th Cir. 2005) ("Because the Supreme Court has not clearly established when a

3    *Faretta* request is untimely, other courts are free to do so as long as their standards comport with

4    the Supreme Court's holding that a request 'weeks before trial' is timely.").

5             Here, petitioner briefly mentioned the possibility of going "pro per" on March 24,

6    2007, several days before trial, but he did not pursue the issue or make a request.  He did not

7    make a clear and unequivocal request to represent himself until April 7, 2007, the day of trial.

8    His request immediately followed the trial court's denial of his *Marsden* motion.  Under these

9    circumstances, the state courts' rejection of the claim on the basis that the request was untimely

10   and that it did not arise out of a legitimate desire for self-representation was a reasonable

11   application of clearly established federal law.  *See Armant v. Marquez*, 772 F. 2d 552, 555 (9th

12   Cir. 1985) (holding that a proper request for self-representation must be timely, unequivocal, and

13   not be a tactic to secure delay); *Marshall*, 395 F.3d at 1061 (finding no Sixth Amendment

14   violation where defendant's *Faretta* request 'fell well inside the 'weeks before trial' standard");

15   *Fritz v. Spalding*, 682 F.2d 782, 784-85 (9th Cir. 1982) (In deciding whether a timely request

16   was made for the purpose of delay, a court must "examine the events preceding the motion, to

17   determine whether they are consistent with a good faith assertion of the *Faretta* right and

18   whether the defendant could reasonably be expected to have made the request at an earlier

19   time.").  Petitioner's claim challenging the denial of his *Faretta* motion should be denied.

20           B.     Continuance

21           During petitioner's retrial, M.G. testified for the first time that he suffered from

22   paranoid schizophrenia.  Petitioner claims the trial court improperly denied his post-trial request

23   for a continuance to investigate this "new evidence" for purposes of a new trial motion.

24           The matter of whether to grant a trial continuance is traditionally within the

25   discretion of the trial judge.  *Avery v. Alabama*, 308 U.S. 444, 446 (1940).  There are no

26   mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due

process; rather, "[t]he answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964); *see also Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) ("broad discretion must be granted trial courts on matters of continuances"). Even if a request for continuance is improperly denied, habeas corpus relief is not available unless there is a showing of actual prejudice to petitioner's defense resulting from the refusal to grant a continuance. *See Gallego v. McDaniel*, 124 F.3d 1065, 1072 (9th Cir. 1997), *cert. denied*, 118 S. Ct. 2299 (1998).

In support of this claim, petitioner alleges his attorney "had preliminary consultations with a forensic psychologist who affirmed paranoid schizophrenia would cause a witness to testify not knowing subjectively what he was testifying to was truth or not." Pet. at 5. Presented with this claim, the California Court of Appeal held that the trial court acted within its discretion in denying the continuance:

> A trial court may grant a new trial "[w]hen new evidence is discovered material to the defendant, and which he could not, with reasonable diligence, have discovered and produced at the trial." (§ 1181, subd. 8.) In support of such a motion, the defendant must produce affidavits from the witness who will be offering this evidence; if additional time is needed to obtain these affidavits, the trial court may grant a continuance "for such length of time as, under all circumstances of the case, may seem reasonable." The trial court is vested with broad discretion in ruling on motions made under section 1181, subdivision 8. (*People v. Musselwhite* (1998) 17 Cal.4th 1216, 1252.)
>
> Defense counsel asserted that he had consulted with a forensic psychologist who believed paranoid schizophrenia could have a "potentially profound impact on witness credibility." However, the psychologist needed to review M.G.'s medical records and trial testimony in order to give a professional opinion about M.G.'s credibility. Defendant requested a continuance so that he could obtain a transcript of M.G.'s testimony and copies of M.G.'s medical records. The trial court denied both the continuance and the motion for new trial.
>
> The court acted well within its discretion in making these rulings for one basic reason: defendant's motion for new trial was not based on newly discovered evidence. M.G. testified on April 9,

2007, that he had been hospitalized for paranoid schizophrenia and took medication to control this condition. As already noted, no request for continuance was made at that time. The jury returned its verdicts on April 12. Defendant's motion for new trial was not made until six weeks later, on May 23, 2007. He asserted he had tried to obtain a transcript of M.G.'s testimony a few weeks earlier, but the reporter had been on vacation. He did not describe any efforts to obtain M.G.'s medical records.

As the trial court noted, defense counsel was aware of M.G.'s psychiatric diagnosis during trial and could have pursued his investigations at that time. He did not. His motion for new trial was not predicated on newly discovered evidence but on information he learned weeks earlier at trial. Moreover, as the court noted, M.G. testified in an appropriate manner and showed no signs of psychosis; defendant's motion was based entirely on speculation. The trial court acted well within its discretion in concluding that there was no justification for either a new trial or a continuance. (See *People v. Musselwhite*, *supra*, 17 Cal.4th at p. 1252.)

LD 5 at 13-15.

As the trial court noted and the state appellate court found, the motion was premised merely on speculation that an expert's testimony about M.G.'s diagnosis *might* have been helpful to the defense. Importantly, defense counsel gave no explanation for waiting until weeks after trial to request the continuance. Under these circumstances, denial of the requested post-trial continuance fell within the broad discretion of the trial court and did not violate petitioner's right to due process. *See Ungar*, 376 U.S. at 589; *Morris*, 461 U.S. at 11-12. Moreover, there is no evidence in the record of any further investigation or interview of potential expert witnesses, and thus no showing of how the additional evidence would have been helpful to the defense. Accordingly, petitioner also fails to show actual prejudice resulting from denial of the continuance. *Gallego*, 124 F.3d at 1072-73. For all these reasons, the state court's rejection of the claim is not contrary to, or an unreasonable application of clearly established federal law. Petitioner's claim regarding the trial court's denial of a continuance should be denied.

/////

C.     Effective Assistance of Counsel

Petitioner claims trial counsel rendered ineffective assistance at his retrial by failing to request a continuance or move for a mistrial when M.G. testified to information not revealed during petitioner's first trial.  Petitioner further claims trial counsel failed to "introduce available impeachment evidence [used in] his first trial or the use of police records [sic]."  Pet. at 6.

Habeas corpus petitions asserting ineffective assistance of counsel are governed by the clearly established federal law of *Strickland v. Washington,* 466 U.S. 668, 686, (1984).  *See Baylor v. Estelle,* 94 F.3d 1321, 1323 (9th Cir. 1996).  Ineffective assistance of counsel exists where "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686.  In order to make a state a cognizable claim under *Strickland,* petitioner must show, first, that counsel performed deficiently, and second, that prejudice resulted from counsel's deficient performance. *Id.* at 688.

"Surmounting *Strickland's* high bar is never an easy task." *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (citing *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).  Establishing an unreasonable application of *Strickland* by a state court is all the more difficult: "the question is not whether counsel's actions were reasonable[;] [t]he question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. *Richter*, 131 S. Ct. at 788 (internal quotations and citations omitted).  In this case, a reasonable argument exists that each of counsel's challenged omissions resulted from his competent professional judgment.

As to this claim, the state appellate court held:

At trial, M.G. testified that he suffered from paranoid schizophrenia and took medication for this condition.  This was apparently the first time that this diagnosis was revealed. Defendant contends his attorney should have been alerted to this possibility because M.G. testified at the first trial that he took

medications for unspecified mental and emotional problems. According to defendant, his attorney should have delved into M.G.'s medical history before retrial began or, at the very least, sought a continuance or mistrial when M.G. made this disclosure. Defendant theorizes that paranoid schizophrenia could have reflected on M.G.'s credibility as a witness because his capacity for distinguishing fact from fiction could have been affected.

These suppositions do not establish the prejudice necessary for an ineffective assistance of counsel claim.  There is no evidence to support defendant's theory that paranoid schizophrenia affected M.G.'s ability to relate events that had occurred years earlier. M.G. was taking medication to control this condition and was not delusional at trial.  He was coherent and responsive to questions, and described his mental illness to the jury; the only apparent difficulties with his testimony stemmed from his developmental disabilities, not any other mental disorder.  Defendant's theories are predicated on speculation, not evidence.  Because defendant cannot demonstrate to a reasonable probability that a different verdict would have resulted had his attorney investigated M.G.'s mental health, his claim of ineffective assistance of counsel cannot succeed.

Defendant also faults his attorney for failing to impeach M.G. and C.J. with prior inconsistent statements and testimony they gave at the first trial.  Again, however, this "shortcoming" does not demonstrate ineffective assistance of counsel.  The use of impeachment evidence is a matter of trial tactics and will not be second-guessed.  (*People v. Barnett* (1998) 17 Cal.4th 1044, 1140.) Much of the evidence outlined by defendant relates to peripheral matters that occurred years earlier.  Defense counsel may well have concluded that attacking sympathetic witnesses would serve only to irritate the jury and detract from the central issues of the case.

Just as importantly, defendant cannot demonstrate that a more favorable result would have resulted had this impeachment evidence been introduced.  In fact, this evidence was elicited in the first trial and the jury nonetheless convicted defendant.

Given these circumstances, defendant cannot establish ineffective assistance of counsel.

LD 5 at 9-11.

Petitioner fails to demonstrate prejudice as to each of counsel's alleged failures.

His assertions of a more favorable outcome are based solely on speculation and are unsupported

by actual evidence.  A mere possibility of a different outcome does not establish prejudice.  *See*

1    *Strickland*, 466 U.S. at 693 (petitioner's burden is to affirmatively prove prejudice); *Cooks v.*

2    *Spalding*, 660 F.2d 738, 740 (9th Cir. 1981) (per curiam) (mere speculation does not demonstrate

3    prejudice).  Accordingly, the state court's rejection of petitioner's ineffective assistance of

4    counsel claim for lack of prejudice is consistent with, and a reasonable application of the

5    *Strickland* standard.  Petitioner's ineffective assistance of counsel claim should be denied.

6           D.     CALCRIM No. 318

7                  At petitioner's re-trial, M.G. testified petitioner molested him more than once and

8    less than four times; he could not remember "at all" whether it occurred more or less than three

9    times.  LD 10 at 158-159.  The parties stipulated, however, that when M.G. first reported the

10   molestations, he reported approximately six occurrences; during a videotaped interview, M.G.

11   said it occurred three times a week for about two years; and at petitioner's first trial in 2004,

12   M.G. testified petitioner molested him two to three times at the Rollingwood Apartments and

13   two to three times at the Marconi house.  LD 10 at 194-95.  Petitioner claims the trial court's

14   instruction with CALCRIM No. 318 improperly shifted the burden of proof by directing the jury

15   to find his prior inconsistent statements to be true, in violation constitutional rights to due

16   process and a jury trial.

17                 Respondent contends this claim is unexhausted.  Generally, a state prisoner must

18   exhaust all available state court remedies either on direct appeal or through collateral

19   proceedings before a federal court may consider granting habeas corpus relief.  28 U.S.C. §

20   2254(b)(1).  *Casey v. Moore*, 386 F.3d 896, 915-56 (9th Cir. 2004), cert. denied, 545 U.S. 1146

21   (2005).  A state prisoner satisfies the exhaustion requirement by fairly presenting his claim to the

22   appropriate state courts at all appellate stages afforded under state law.  *Baldwin v. Reese*, 541

23   U.S. 27, 29 (2004).

24                 Petitioner presented this claim to the state appellate court but did not include it in

25   his petition for review to the California Supreme Court, his only filing in the state supreme court.

26   *See* L.D. 2, 6.  He makes no response to respondent's assertion of procedural bar.  Petitioner has

1   failed to properly exhaust administrative remedies by fairly presenting his federal claim to the

2   appropriate state court at *each* appellate stage.  *See Casey v. Moore*, 386 F.3d 896, 916 (2004)

3   ("Even before *Baldwin*, we had held that to exhaust a habeas claim, a petitioner must properly

4   raise it on every level of direct review.") (citing *Ortberg v. Moody*, 961 F.2d 135, 137 (9th Cir.

5   1992)).

6            Nevertheless, a federal court may deny a claim on the merits even if the claim is

7   unexhausted.  28 U.S.C. §2254(b)(2); *Cassett v. Stewart*, 406 F.3d 614, 623-34 (9th Cir. 2005).

8   Because this claim is clearly without merit, it is recommended that the claim be denied

9   notwithstanding petitioner's failure to exhaust.

10           The trial court instructed the jury with CALCRIM No. 318 ("Prior Statements as

11  Evidence") as follows:

12           You have heard evidence of statements that a witness made before
             trial.  If you decide that the witness made those statements, you
13           may use those statements in two ways:

14           1.      To evaluate whether the witness's testimony in court is
                     believable;
15
             AND
16
             2.      As evidence that the information in those earlier statements
17                   is true.

18  LD 8 at 121; LD 10 at 283-84.

19           The state appellate court rejected petitioner's claim of instructional error, holding

20  that the instruction accurately stated the law and that it was properly given:

21           As we recently explained: "CALCRIM No. 318 tells jurors how
             they may use the prior statements '[i]f [they] decide that the
22           witness made those statements ....'  Thus, the 'may' comes into
             play only after the jurors have found the statements were made.
23           The instruction does not allow the jurors to ignore the evidence."
             (*People v. Golde* (2008) 163 Cal.App.4th 101, 119-120; accord
24           *People v. Felix* (2008) 160 Cal.App.4th 849, 859.)

25           Nothing in this instruction created a mandatory presumption.  The
             jury was told that it "may" use these statements in particular ways
26  /////

"if" it determined that the witness made those statements.
CALCRIM No. 318 is a proper statement of law.

LD 5 at 12. This determination of state law is binding. *See Bradshaw v. Richey*, 546 U.S. 75, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

Moreover, contrary to petitioner's assertion, the instruction did not impermissibly shift the burden of proof or create an unlawful presumption that violated due process. In general, "[a] mandatory presumption instructs the jury that it must infer the presumed fact if... certain predicate facts" are proved. *Francis v. Franklin*, 471 U.S. 307, 314 (1985). The due process clause is implicated if the presumed fact is an element of the prosecution's case, because in that situation, proof of predicate facts will either remove the presumed element from the State's case altogether or shift the burden of persuasion on the presumed element to the defendant. *Id.* at 317; *see also In re Winship*, 39 U.S. 358, 364 (1970) (noting it is well established the burden is on the prosecution to prove each and every element of the crime charged beyond a reasonable doubt).

On the other hand, a permissive presumption allows, but does not require, the trier of fact to infer the elemental fact from proof of the basic fact. *County Court of Ulster Cty. v. Allen*, 442 U.S. 149, 157 (1979). In order for a permissive presumption to pass constitutional muster, it must be said with substantial assurance that "the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." *Leary v. United States*, 395 U.S. 6, 36 (1968). Similarly, there must be a "rational connection between the fact proved and the ultimate fact presumed" -- a connection grounded in "common experience." *Tot v. United States*, 319 U.S. 463, 467-68 (1943). Notwithstanding the label placed on an evidentiary presumption, the ultimate test of its constitutionality remains constant: "[t]he device must not undermine the fact finder's responsibility at trial, based on evidence adduced by the State, to find

/////

14

1   the ultimate facts beyond a reasonable doubt." *Ulster Cty.*, 442 U.S. at 156 (citing *In re*

2   *Winship*, 397 U.S. at 364).

3          CALCRIM No. 318, as given at petitioner's trial, did not tell the jury it had to

4   infer any fact. It did not shift the burden of proof to the defense or relieve the state from its

5   burden to prove any element of the crime.  Petitioner's argument that the court "effectively

6   directed" the jury to ignore M.G.'s trial testimony about the number of molestations that

7   occurred and instead consider his prior statements as true does not accurately characterize the

8   plain language of CALCRIM No. 318.  Petitioner cites no applicable federal authority that

9   supports his contention that CALCRIM No. 318 creates an unlawful presumption.  In sum, he

10  fails to demonstrate that the state courts' rejection of this claim was contrary to, or an

11  unreasonable application of clearly established Supreme Court precedent, and the jury

12  instruction claim should be denied.

13          E.      Prosecutorial Delay

14          Petitioner claims the state's unreasonable delay in prosecuting him prejudicially

15  violated his constitutional rights to due process and a speedy trial.  Petitioner presented this

16  claim as part of his first state appeal to the California Court of Appeal.  The state appellate court

17  set forth the relevant background facts, and held as follows:

18          Our determination that reversal is mandated [based on denial of the
            right to a public trial] renders the majority of defendant's claims
19          moot.

20          However, we address defendant's claim regarding prosecutorial
            delay as guidance to the trial court upon remand of the matter.
21
            The charges involving C.J. originally were filed in 1997 but were
22          "dismissed due to insufficient evidence at the time."  The charges
            were refiled in 2003 and consolidated with the charges concerning
23          M.G.  Defendant filed a motion to dismiss the charges involving
            C.J. based on prosecutorial delay.  He asserted he was prejudiced
24          by the delay because C.J.'s grandmother, Jean, had died in 1999,
            and she would have provided testimony favorable to the defense.
25          According to defendant, Jean would have testified that, contrary to
            C.J.'s claim, Jean was not visiting Geraldine during the period
26          when C.J. maintained she was raped by defendant.  In addition,

                                            15

Jean would have testified that in the burgundy Camaro that C.J. claimed was in the garage when defendant raped her had been sold several months before the rape was alleged to have occurred.

The trial court found the defense had been prejudiced by the delay because Jean could have provided testimony to impeach C.J. The prosecutor offered to waive the hearsay objection to Jean's statement being introduced through the testimony of defendant's former attorney, to whom the statement had been made. Based on this stipulation, the trial court denied defendant's motion, ruling "defendant's due process rights have not been prejudiced to the extent requiring the charges to be dismissed."

Defendant claims that the delay in refiling the charges involving C.J. violated his right to due process. We agree with the trial court that, under the circumstances, defendant was not prejudiced by the delay.

"The statute of limitation is usually considered the primary guarantee against bringing overly stale criminal charges." (*People v. Archerd* (1970) 3 Cal.3d 615, 639.) However, a delay in filing charges that does not violate the statute of limitations may still constitute a denial of due process of law under the state and federal Constitutions. (*People v. Catlin* (2001) 26 Cal.4th 81, 107.) A defendant seeking to dismiss a charge on this ground must demonstrate that the delay caused by "*substantial* prejudice to [his] rights to a fair trial" to warrant dismissal on due process grounds. (*United States v. Marion* (1971) 404 U.S. 307, 324 [30 L.Ed.2d 468, 481], italics added; *People v. Horning* (2004) 34 Cal.4th 871, 895.) If a defendant establishes sufficient prejudice, the trial court "balances the harm to the defendant against the [prosecution's] justification for the delay." (*Catlin, supra,* at p. 107.)

Here, the prejudice caused by the loss of Jean as a witness was mitigated by the parties' stipulation that defendant's previous attorney would be permitted to testify regarding the impeaching statements made by Jean. In addition, both Geraldine and M.G. corroborated that Geraldine no longer had possession of the burgundy Camaro when the offense concerning C.J. allegedly occurred. And defendant's trial attorney was aware that Geraldine could corroborate that Jean was not visiting during the period when defendant allegedly raped C.J., as this was discussed during the hearing on the motion to dismiss for prosecutorial delay. The loss of cumulative evidence does not result in actual prejudice. (*United States v. McMutuary* (7th Cir. 2000) 217 F.3d 477, 481-482; see *Scherling v. Superior Court* (1978) 22 Cal.3d 493, 506.) As Jean's statement was cumulative of other available evidence, no actual prejudice was suffered.[8]

/////
/////

16

Accordingly, we discern no error in the trial court's determination that defendant did not suffer sufficient prejudice by the delay in filing charges to warrant a dismissal.

> FN.8  Defendant argues he was prejudiced by the introduction of Jean's statement through another witness because the prosecutor commented during her closing argument that Jean did not testify and that she "made it clear" when she made the statements that she did not want to testify.  To say the least, the prosecutor's comment in this regard did not assist the trial court's effort to mitigate any prejudice to defendant from the delay in filing the C.J. charges because it impliedly denigrated Jean's statement based on the manner in which it was presented to the jury.  In addition, the comment was misleading because the jury was not informed that Jean was deceased and might have inferred that her failure to testify was a reflection on her credibility.  However, remand of the matter renders this collateral aspect of the prejudice inquiry moot.

LD 1 at 13-16 (additional footnote omitted).

Following petitioner's retrial, the state appellate court left undisturbed its 2006 ruling on petitioner's speedy trial claim, holding:

> Reiterating a claim made in his first appeal, defendant asserts that the 2003 refiling of charges relating to C.J., six years after they were dismissed in 1997, violated his rights to due process.  However, as defendant also recognizes, this issue is not cognizable because it was already resolved adversely to him in his first appeal.
>
> "Under the law of the case doctrine, '"where, upon an appeal, the [reviewing] court, in deciding the appeal, states in its opinion a principle or rule o flaw necessary to the decision, that principle or rule of law becomes the law of the case ..., both in the lower court and upon subsequent appeal..."'" (*People v. Turner* (2004) 34 Cal.4th 406, 417.)  "Finality is attributed to an initial appellate ruling so as to avoid the further reversal and proceedings on remand that would result if the initial ruling were not adhered to in a later appellate proceeding." (*Searle v. Allstate Life Ins. Co.* (1985) 38 Cal.3d 425, 435.)  Exceptions to the law of the case doctrine are limited to two situations: if its application will result in an unjust decision or if the controlling rules of law hae changed in the interim.  (*People v. Stanley* (1995) 10 Cal.4th 764, 787.)  "The unjust decision exception does not apply when there is a mere disagreement with the prior appellate determination." (*Ibid.*)
>
> We resolved defendant's speedy trial claim in the first appeal, concluding that defendant's due process rights were not violated and that defendant did not suffer sufficient prejudice to require dismissal of the charges.  Neither of the exceptions to the law of the case doctrine apply here.  As defendant acknowledges, we are

bound by our earlier determination that there was no speedy trial violation.

LD 5 at 3-4.

Statutes of limitations provide the primary guarantee against prosecutorial delay and the bringing of stale charges. *United States v. Marion*, 404 U.S. 307, 322 (1971) (quoting *United States v. Ewell*, 383 U.S. 116, 122 (1966)). The Due Process Clause also "has a limited role to play in protecting against oppressive delay." *United States v. Lovasco*, 431 U.S. 783, 789 (1977). A due process inquiry into pre-indictment delay "must consider the reasons for the delay as well as the prejudice to the accused." *Lovasco*, 431 U.S. at 790. "[P]roof of prejudice is generally a necessary but not sufficient element of a due process claim." *Id.*

"[T]he Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment." *Lovasco*, 431 U.S. at 790. "Judges are not free, in defining "due process," to impose on law enforcement officials our "personal and private notions" of fairness and to "disregard the limits that bind judges in their judicial function." *Id.* (quoting *Rochin v. California*, 342 U.S. 165, 170 (1952)). Rather, the Supreme Court has explained

> Our task is more circumscribed. We are to determine only whether the action complained of... violates those "fundamental conceptions of justice which lie at the base of our civil and political institutions," *Mooney v. Holohan*, 294 U.S. 103, 112, 55 S.Ct. 340, 342, 79 L.Ed. 791 (1935), and which define "the community's sense of fair play and decency," *Rochin v. California*, supra, 342 U.S. at 173, 72 S.Ct. at 210.

*Lovasco*, 431 U.S. at 790.

In *Lovasco*, the Supreme Court thoroughly examined the policy reasons for not requiring, as a constitutional mandate, that a prosecutor bring charges as soon as probable cause has been established. The *Lovasco* Court rejected the argument that the government is constitutionally required to file prompt charges once it has assembled sufficient evidence to prove guilt beyond a reasonable doubt. *Id.* at 791-92. Several reasons were identified for

18

allowing considerable latitude in the timing of commencement of prosecution.  The Supreme

Court concluded:

> We would be most reluctant to adopt a rule which would have these consequences absent a clear constitutional command to do so.  We can find no such command in the Due Process Clause of the Fifth Amendment.  In our view, investigative delay is fundamentally unlike delay undertaken by the Government solely "to gain tactical advantage over the accused," *United States v. Marion*, 404 U.S., at 324, 92 S.Ct., at 465, precisely because investigative delay is not so one-sided.  Rather than deviating from elementary standards of "fair play and decency," a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt.  Penalizing prosecutors who defer action for these reasons would subordinate the goal of "orderly expedition" to that of "mere speed," *Smith v. United States*, 360 U.S. 1, 10, 79 S.Ct. 991, 997, 3 L.Ed.2d 1041 (1959).  This the Due Process Clause does not require.

*Lovasco*, 431 U.S. at 795-96.

Thus, "to prosecute a defendant following investigative delay does not deprive

him of due process, even if his defense might have been somewhat prejudiced by the lapse of

time." *Lovasco*, 431 U.S. at 796.  It is not enough to show that the prosecution could have

proceeded more rapidly or that there was some period of delay in which no additional

investigation was taking place.  *See United States v. Walker*, 601 F.2d 1051, 1056 (9th Cir.

1979).  "Pre-indictment delay is permissible unless it violates 'fundamental conceptions of

justice which lie at the base of our civil and political institutions'." *Id.* (quoting *Arnold v.

McCarthy*, 566 F.2d 1377 (9th Cir. 1978).  The prosecution may not, however, intentionally

delay in commencing prosecution for the purpose of obtaining a tactical advantage, to the

prejudice of the accused, or delay in reckless disregard of known circumstances suggesting that

delay would impair the ability to mount an effective defense.  *Walker*, 601 F.2d at 1056 (citing

*Lovasco*, 431 U.S. at 795, n.17).

In this case, as the state court found, the potential for prejudice was mitigated by

the parties' stipulation to admit hearsay testimony as to the impeaching statements made by Jean

before her death that Geraldine no longer possessed the Camaro during the period of petitioner's visitation.  In addition, because both Geraldine and M.G. gave corroborating testimony that Geraldine no longer possessed the Camaro at the relevant time (LD 1 at 16), Jean's testimony on this point, if available, would have been cumulative in any event.  Under these circumstances, the state court's rejection of the claim for lack of prejudice was reasonable.  *Lovasco*, 431 U.S. at 790 (holding that prejudice is a necessary element of the constitutional claim).  Moreover, a due process violation is not shown because there is no evidence that the delay was intentional and for the purpose of gaining tactical advantage.  *See Lovasco*, 431 U.S. at 796; *Marion*, 404 U.S. at 324.  For all these reasons, petitioner's claim premised on the refiling of charges and prosecutorial delay should be denied.

CONCLUSION

For the foregoing reasons, the petition should be denied.  Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases in the United States District Courts, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11, 28 U.S.C. § 2254.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The court must either issue a certificate of appealability indicating which issues satisfy the required showing or must state the reasons why such a certificate should not issue.  Fed. R. App. P. 22(b).  For the reasons set forth in these findings and recommendations, petitioner has not made a substantial showing of the denial of a constitutional right.

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Petitioner's application for writ of habeas corpus be denied; and

2.  The district court decline to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

1  days after being served with these findings and recommendations, any party may file written

2  objections with the court and serve a copy on all parties.  Such a document should be captioned

3  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

4  objections shall be filed and served within fourteen days after service of the objections. Failure

5  to file objections within the specified time may waive the right to appeal the District Court's

6  order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

7  DATED: **July 19, 2012.**

8

9  _____
   UNITED STATES MAGISTRATE JUDGE

10

11  LS/phil1368.hc

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26